Slip Op. 12- 50

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| UNITED STATES,<br><br>        Plaintiff,<br><br>        v.<br><br>NITEK ELECTRONICS, INC.,<br><br>        Defendant. | Before: Judith M. Barzilay, Senior Judge<br><br>Court No. 11-00078 |

[Motion to dismiss for lack of subject matter jurisdiction denied; motion to dismiss for failure to state a claim granted in part and denied in part.]

April 13, 2012

*Stuart F. Delery*, Acting Assistant Attorney General; *Jeanne E. Davidson*, Director; *Patricia M. McCarthy*, Assistant Director; *Delisa M. Sanchez*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice; and *Eric P. Delmar*, U.S. Customs and Border Protection, Of Counsel, for Plaintiff United States.

Baker & McKenzie, LLP (*William D. Outman, II*, *Michael E. Murphy*, *Kevin J. Sullivan*) for Defendant Nitek Electronics, Inc.

**MEMORANDUM & ORDER**

      BARZILAY, Senior Judge:  Plaintiff United States brings this action pursuant to section 592 of the Tariff Act of 1930, 19 U.S.C. § 1592, seeking recovery of lost duties (Count I), lost antidumping duties (Count II), and penalties based upon negligence (Count III).  Compl. ¶¶ 33-39.  Currently before the court is Defendant Nitek Electronics, Inc.'s ("Defendant" or "Nitek") motion to dismiss this action pursuant to USCIT Rule 12(b)(1) for lack of subject matter jurisdiction or, in the alternative, USCIT Rule 12(b)(5) for failure to state a claim.  For the reasons below, the court denies Defendant's Rule 12(b)(1) motion, denies Defendant's Rule

12(b)(5) motion with respect to Counts I and II, and grants Defendant's Rule 12(b)(5) motion with respect to Count III.

## I. Background

On April 1, 2004, U.S. Customs and Border Protection ("Customs") issued a letter to Nitek, pursuant to § 1592(d), demanding payment of duties allegedly owed on certain entries of gas meter swivels and gas meter nuts from the People's Republic of China. Compl. ¶¶ 5, 20, Ex. B. Customs claimed that the merchandise – entered between June 14, 2001, and March 22, 2004 – was misclassified under the U.S. Harmonized Tariff Schedule ("HTSUS"), resulting in lost duties. Compl. ¶¶ 6, 7, 8, Ex. B. Further, Customs alleged that Nitek failed to classify its merchandise as subject to the antidumping duty order *Certain Malleable Iron Pipe Fittings From the People's Republic of China*, 68 Fed. Reg. 69,376 (Dep't of Commerce Dec. 12, 2003) (notice of antidumping duty). Compl. ¶¶ 9, 20, Ex. B.

On March 21, 2005, Customs issued a pre-penalty notice alleging that Nitek "entered or attempted to enter pipe fittings into the commerce of the United States by means of material false statements and documents, and/or omissions." Compl. Ex. E. Customs alleged a "tentative culpability" of gross negligence and appended a list of the 38 pertinent entries. Compl. Ex. E. Included with the pre-penalty notice was a statute of limitations waiver form, which Nitek subsequently executed. Compl. ¶ 23, Exs. E, F.

Concurrently with these ongoing penalty proceedings, other importers of gas meter swivels and gas meter nuts brought an action in this Court challenging the antidumping duty order. *See Sango Int'l L.P. v. United States*, 30 CIT 602, 429 F. Supp. 2d 1356 (2006) ("*Sango International*"). In a letter dated April 1, 2005, Nitek requested that Customs suspend the penalty proceedings pending resolution of *Sango International*. Compl. ¶ 24, Ex. G. Customs

agreed to stay the proceedings in exchange for two subsequent waivers of the statute of limitations.  Compl. ¶¶ 25, 29, Exs. H, I, K, L.  After a series of remands, the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") issued a final decision in *Sango International* on June 4, 2009, sustaining the order.  *See Sango Int'l L.P. v. United States*, 567 F.3d 1356 (Fed. Cir. 2009).

Customs issued a final penalty claim against Nitek on February 24, 2011.  Compl. ¶ 30, Ex. M.  Customs again alleged a "tentative culpability" of gross negligence, but omitted from the appendix of subject entries six entries previously listed in the pre-penalty notice.  Compl. Ex. M.  Customs also informed Nitek that, absent agreement to an additional waiver of the statute of limitations, Nitek had seven days "to file a petition for relief from the penalty issued."  Compl. Ex. M.

On March 3, 2011, counsel for Defendant filed a letter with Customs stating that Nitek had acted with reasonable care in classifying its merchandise and, in an effort to resolve the claim, offered to pay all duties owed.  Def.'s Reply Ex. 1.[1]  Plaintiff thereafter filed this action.

## II. Standard of Review

A fundamental question in any action before the Court is whether subject matter jurisdiction exists over the claims presented.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998).  "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety."  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006); *see* 13 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3522 (3d ed. 2011) ("A federal court's entertaining a case that is not within its

---

[1] Defendant first brought this letter to the court's attention in its reply brief.  Def.'s Reply Ex. 1. Normally, the court will rely only on the complaint and attachments thereto when deciding a Rule 12(b)(5) motion to dismiss.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  Because this exhibit does not impact the court's ultimate disposition, the court notes this letter solely for context.

subject matter jurisdiction is no mere technical violation . . . ."). The plaintiff bears the burden of establishing jurisdiction, *see Norsk Hydro Can., Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006), but, in deciding a Rule 12(b)(1) motion to dismiss, the Court accepts as true all uncontroverted factual allegations in the complaint, *Engage Learning, Inc. v. Salazaar*, 660 F.3d 1346, 1355 (Fed. Cir. 2011).

To survive a Rule 12(b)(5) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff bears the burden of pleading the requisite facts, USCIT R. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."), but the Court accepts as true all well-pled factual allegations and draws all reasonable inferences in favor of the plaintiff, *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 n.13 (Fed. Cir. 1993).

### III. Discussion

**A. Subject Matter Jurisdiction**

This Court has exclusive jurisdiction over any action by the United States to recover a penalty imposed for a violation of 19 U.S.C. § 1592.[2]  28 U.S.C. § 1582(1). In a § 1592 recovery

---

[2] Section 1592(a) provides that no person, "by fraud, gross negligence, or negligence,"
    (A) may enter, introduce, or attempt to enter or introduce any merchandise into the commerce of the United States by means of--
        (i) any document or electronically transmitted data or information, written or oral statement, or act which is material and false, or
        (ii) any omission which is material, or
    (B) may aid or abet any other person to violate subparagraph (A).
§ 1592(A).

action, however, the Court "shall, where appropriate, require the exhaustion of administrative remedies," 28 U.S.C. § 2637(d); *United States v. Rotek, Inc.*, 22 CIT 503, 508 (1998) (not reported in F. Supp.) ("*Rotek*"), the detailed procedures for which Congress enacted in § 1592(b), *see* § 1592(b).  It is also well established that § 2637(d) grants the court the discretion to waive § 1592(b) exhaustion in appropriate circumstances.  *See*, *e.g., Agro Dutch Indus. Ltd. v. United States*, 508 F.3d 1024, 1029 (Fed. Cir. 2007); *Rotek*, 22 CIT at 508.

Defendant argues that Customs failed to perfect its penalty claim via the administrative process in § 1592(b) and that, as a result, the court lacks jurisdiction over this action.  Def.'s Br. 8; Def.'s Reply 4-8.  Defendant concedes (as it must) that exhaustion in this case is discretionary but argues that Plaintiff has failed to demonstrate that a waiver of exhaustion is appropriate and that jurisdiction therefore cannot attach.  Def.'s Reply 6.

Dismissal based upon a lack of subject matter jurisdiction concerns the court's power to hear a case rather than the parties' ability to seek relief.  *Landgraf v. USI Film Prods.*, 511 U.S. 244, 274 (1994).  Thus, the court is guided by the Supreme Court's recent admonitions that courts be mindful of the "important distinctions between jurisdictional prescriptions and claim-processing rules . . . ."  *Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1244 (2010) ("*Reed Elsevier*"); *Arbaugh*, 546 U.S. at 511 ("On the subject-matter jurisdiction/ingredient-of-claim-for-relief dichotomy, this Court and others have been less than meticulous.").  In particular, these holdings have emphasized the precept that "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Arbaugh*, 546 U.S. at 516; *see United States v. Robert E. Landweer & Co.*, 36 CIT __, ___, 816 F. Supp. 2d 1364, 1368-69 (2012) ("*Landweer*") ("[T]he court presumes that exhaustion is non-jurisdictional unless Congress has stated in sweeping and direct language (i.e., in clear and

unequivocal terms) that there is no subject matter jurisdiction prior to exhaustion." (citing *Avocados Plus Inc. v. Veneman*, 370 F.3d 1243, 1248 (D.C. Cir. 2004)). In *Reed Elsevier*, the Court found nonjurisdictional a statutory precondition that "is not clearly labeled jurisdictional, is not located in a jurisdiction-granting provision, and admits of congressionally authorized exceptions." *Reed Elsevier*, 130 S. Ct. at 1247; *accord Ford Motor Co. v. United States*, 635 F.3d 550, 556 (Fed. Cir. 2011).

As an initial matter, § 1592(b) is neither clearly labeled jurisdictional nor located in the provision granting the Court jurisdiction over these penalty claims, § 1582(1). Applying the guidance in *Reed Elsevier*, the court finds that these considerations strongly counsel against treating § 1592(b) as jurisdictional.

Further undermining Defendant's argument, § 1592(b) is subject to a congressionally authorized exception. "[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *Arbaugh*, 546 U.S. at 514 (citation and internal quotation marks omitted). As noted, the court is empowered to waive § 1592(b) exhaustion pursuant to § 2637(d), which precludes a finding that these administrative penalty procedures are jurisdictional prerequisites to suit.[3] The court therefore agrees with previous decisions by this Court holding that § 1592(b) exhaustion is nonjurisdictional, *Rotek*, 22 CIT at 508-09; *cf. Landweer*, 36 CIT at ___, 816 F. Supp. 2d at 1372 (examining exhaustion pursuant to 19 U.S.C.

---

[3] Indeed, the Federal Circuit and this Court have repeatedly found that administrative processes subject to § 2637(d) are nonjurisdictional inasmuch as the statute renders exhaustion discretionary. *See, e.g., United States v. Priority Prods., Inc.*, 793 F.2d 296, 300 (Fed. Cir. 1986); *Wuxi Seamless Oil Pipe Co. v. United States*, 35 CIT __, ___, 780 F. Supp. 2d 1337, 1341 n.5 (2011); *Hartford Fire Ins. Co. v. United States*, 31 CIT 1281, 1284 n.8, 507 F. Supp. 2d 1331, 1334 n.8 (2007) ("It is somewhat unclear why the government is relying on 28 U.S.C. § 2637(d) in support of its USCIT R. 12(b)(1) motion, as section 2637(d) is discretionary, not jurisdictional."); *San Vicente Camalu SPR de RI v. United States*, 31 CIT 599, 609, 491 F. Supp. 2d 1186, 1197 (2007).

§ 1641), denies Defendant's Rule 12(b)(1) motion, and exercises jurisdiction pursuant to § 1582(1).

**B. Plaintiff's Penalty Claim**

It remains, therefore, for the court to decide whether Plaintiff has exhausted the administrative remedies required for its penalty claim and, if not, whether a waiver of exhaustion is appropriate. This entails a close examination of the Congressional statute setting up the administrative process which may lead to the filing of a penalty action in this Court. Section 1592(b) provides that "[i]f [Customs] has reasonable cause to believe there has been a violation of subsection (a)," it first must issue a pre-penalty notice that, *inter alia*, "specif[ies] all laws and regulations allegedly violated" and "state[s] whether the alleged violation occurred as a result of fraud, gross negligence, or negligence." § 1592(b)(1)(A)(iii), (v). In addition, the pre-penalty notice must "inform [the subject of the notice] that he shall have a reasonable opportunity to make representations, both oral and written, as to why a claim for a monetary penalty should not be issued in the amount stated." § 1592(b)(1)(A)(vii). "After considering representations, if any, made by the person concerned," Customs must then issue a penalty claim if it determines a violation has occurred. § 1592(b)(2). The penalty claim must "specify all changes in the information" Customs provided in the pre-penalty notice. *Id.* Following the penalty claim, the liable party may seek remission or mitigation of the penalty by filing a petition with Customs pursuant to 19 U.S.C. § 1618. *Id.* "At the conclusion of any proceeding under such section 1618, [Customs] shall provide to the person concerned a written statement which sets forth the final determination and the findings of fact and conclusions of law on which such determination is based."[4] *Id.*

---

[4] The parties contest whether the statute requires Customs to issue a written statement if the importer does not file a § 1618 petition and, if not, whether Nitek's letter dated March 3, 2011,

Notably, applicable regulations instruct that prior to receipt of a § 1618 petition "the appropriate Customs field officer will cancel any such formal [§ 1592] claim whenever it is determined that an essential element of the alleged violation is not established by the agency record, including pre-penalty and penalty responses provided by the alleged violator." 19 C.F.R. § 171, App. B(F)(2)(d). Once a party files a § 1618 petition, however, "jurisdiction over the action rests with Customs Headquarters including the authority to cancel the claim." *Id.*

Properly framed, § 1592 creates a cause of action for the United States to recover a penalty claim. *See* § 1592(e) (outlining parameters of "any proceeding commenced by the United States in [this Court] for the recovery of any monetary penalty claimed under this section"); § 1582(1) (granting the Court jurisdiction to hear an action by the United States "to *recover* a civil penalty" (emphasis added)). It follows that the "Court's statutory role is not to *impose* penalties . . . but rather to decide whether to *permit recovery* of penalties the government has already imposed." *United States v. UPS Customhouse Brokerage, Inc.*, 34 CIT __, ___, 686 F. Supp. 2d 1337, 1346 (2010) (emphasis in original) (discussing recovery pursuant to § 1641).

Defendant argues that Plaintiff failed to perfect its penalty claim prior to instituting this action. Def.'s Br. 4-5. Defendant avers that Count III of Plaintiff's complaint constitutes a newly raised, non-exhausted claim inasmuch as Plaintiff is seeking to recover a penalty based upon a degree of culpability (negligence) that differs from that alleged at the administrative level (gross negligence). Def.'s Br. 4-5. Plaintiff responds that it adequately perfected the penalty claim below by alleging that Nitek introduced the subject merchandise into the United States by means of a material false statement or omission. Pl.'s Resp. 14. Plaintiff further suggests that

---

constitutes such a petition. Def.'s Br. 6-7; Pl.'s Resp. 16-18; Def.'s Reply 10-13. Defendant also argues that Plaintiff's failure to list six covered entries in the penalty notice bars recovery of any penalty based upon importation of those entries. Def.'s Br. 5-6. As the court finds that Plaintiff did not otherwise perfect its penalty claim, the court will not address these issues.

the level of culpability alleged below is immaterial to whether Customs perfected the claim. Pl.'s Resp. 13.

This court addressed a similar issue in *United States v. Optrex*, 29 CIT 1494 (2005) (not reported in F. Supp.) ("*Optrex*"). There, the court rejected the government's USCIT Rule 15(a) motion to add to its complaint penalty claims for fraud and gross negligence where Customs alleged only negligence in the underlying administrative proceedings. The court reasoned as follows:

> The language of section 1592 evidences that the level of culpability forms the core around which the government must construct each penalty claim it wishes to bring: Each level of culpability generates a new separate claim. Subsection 1592(b) makes the level of culpability an essential element of the "violation" for which a "penalty" is claimed.

*Optrex*, 29 CIT at 1498-99; *see id.* at 1502 ("The level of culpability is an inextricable part of a particular penalty claim issued pursuant to section 1592(b)(2) . . . ."). In so holding, the court highlighted that § 1592(b) requires the pre-penalty notice and penalty claim to "state whether the alleged violation occurred as a result of fraud, gross negligence, or negligence." *Id.* at 1498 (quoting § 1592(b)(1)(A)(v)); *see* § 1592(b)(2) (mandating that the penalty notice "specify all changes in the information provided under clauses (i) through (vi)" of § 1592(b)(1)(A)). While § 1592(e) subjects these penalty claims to *de novo* review, the court found that this "standard refers to the issues in the context of a specific claim based on one of three types of section 1592 violations and does not allow the court to review entirely new penalty claims." *Optrex*, 29 CIT at 1500; *accord United States v. Ford Motor Co.*, 463 F.3d 1286, 1298 (Fed. Cir. 2006) (citing with favor the holding in *Optrex* that "effectively limited the *de novo* review provided for in § 1592(e) to those issues considered in the proceedings before Customs").

The court sees no reason to apply the statute differently in this case. Section 1592 mandates that Customs perfect a penalty claim prior to seeking recovery in this Court and a

distinct level of culpability creates the nucleus around which that claim forms.  Customs did not seek to impose a penalty on Nitek for negligence at the administrative level and, as a result, the administrative claim for which Customs is seeking recovery simply does not exist.

Plaintiff attempts to distinguish *Optrex* by noting that in that case the government sought to add claims for *higher* levels of culpability than what Customs asserted at the administrative level, rather than *lowering* the level of culpability in its complaint, as the government does here.[5] Pl.'s Resp. 15.  In support of its position, Plaintiff argues that

> [t]he only difference between a negligent violation and a violation deemed to be grossly negligent is that a grossly negligent violation results from an act or acts (of commission or omission) done with actual knowledge of, or wanton disregard for, the relevant facts and with indifference to or disregard for the offender's obligations under the statute.
>
> Thus, the threshold for alleging negligence is embedded within the threshold for alleging gross negligence.  Accordingly, when Customs issued the pre-penalty notice and disclosed to Nitek that it was contemplating a penalty grounded in gross negligence, Customs placed Nitek on notice of the elements for a penalty grounded in negligence.
> . . . .
> In short, in giving notice of the claim for a penalty grounded in gross negligence through the administrative process, the Government also gave notice of the elements upon a claim grounded in negligence.

Pl.'s Resp. 14-16 (internal citation omitted).  The court will not endorse this argument.

"Proper exhaustion demands compliance with . . . critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).  Plaintiff relies heavily on its contention that Customs placed Nitek on notice of the elements of a negligence claim by alleging a higher level of culpability, but fails to demonstrate that such constructive notice is all

---

[5] As Plaintiff notes, *Optrex* also differs from the instant action in that the government there sought to add *additional* claims, pursuant to Rule 15(a), rather than changing the level of culpability of a claim imposed below. Pl.'s Resp. 15 (citing *Optrex*, 29 CIT at 1496).  In light of the applicable statutory regime, however, this proves to be a distinction without a difference.  By alleging a level of culpability different from that alleged below, the government here (as in *Optrex*) is asserting an entirely new claim.

§ 1592 requires for successful exhaustion. Conspicuously absent from Plaintiff's argument is any reference to § 1592(b) and the applicable requirements therein, and Plaintiff cites no other statute, regulation, or precedent (nor any authority from what it might consider comparable areas of law) that support this interpretation.[6] Moreover, the statute clearly requires more: Customs is to articulate a level of culpability in the pre-penalty notice and thereafter indicate any change in that culpability in the final penalty claim. *See* § 1592(b)(1)-(2). The court will not ignore these explicit statutory instructions. Even assuming that Customs had placed Nitek on notice of the elements necessary to establish negligence (a charitable posit), the statute would still not be satisfied. At a minimum, before seeking recovery of a penalty imposed at a different (even lower) level of culpability than that alleged in the pre-penalty phase, Customs is to notify a potential defendant of that change in the penalty claim. Customs did not do so in this case.[7]

---

[6] Most strikingly, Plaintiff does not discuss § 1592(b)(1)(A)(v), which requires the pre-penalty notice to "state whether the alleged violation occurred as a result of fraud, gross negligence, or negligence." Instead, Plaintiff relies solely on *United States v. Jean Roberts of Cal., Inc.*, 30 CIT 2027 (2006) (not reported in F. Supp.) ("*Jean Roberts*"), which is inapposite. The court in *Jean Roberts* addressed a penalty claim in which Customs specifically stated that the importer would be subject to a penalty in the amount of two times the lost revenue, but, apparently in error, listed a dollar amount equal to the lost revenue. *Id.* The court found that despite this error the government could seek recovery for a penalty two times the lost revenue. *Id.* Though Plaintiff truncates its explanatory parenthetical to omit this fact, the court in *Jean Roberts* characterized *Optrex* as relying not only on "the necessity of adequate notice" but also on the § 1592's purpose of affording importers the opportunity to resolve penalty claims at the administrative level, *id.* at 2035, and distinguished the two holdings accordingly. The error addressed in *Jean Roberts* is thus a far cry from the question at hand: whether Customs can seek recovery on a level of culpability it did not allege below.

[7] The court does not ascribe any significance to the fact that Customs describes the level of culpability alleged in the pre-penalty notice and penalty claim as "tentative." Compl. Exs. E, M. Nitek received notice only of a claim for gross negligence – in fact, the record is devoid of any reference by Customs to a level of culpability other than gross negligence – and Customs' mere use of the term "tentative" does not act to mitigate its statutory responsibilities under § 1592(b). Indeed, as the court notes *infra*, Customs has alleged in the alternative culpability levels of both gross negligence and negligence in other proceedings and could have done so here.

It follows that the court finds exhaustion appropriate under the circumstances. Section 2637(d) "indicates a congressional intent that, absent a strong contrary reason, the court should insist that parties exhaust their remedies before the pertinent administrative agencies." *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007). The Court has identified certain limited exceptions in which waiver is appropriate, *see Jiang Brother Fastener Co. v. United States*, 34 CIT __,___, 751 F. Supp. 2d 1345, 1356 (2010), and a plaintiff must "show that it exhausted its administrative remedies, or that it qualifies for an exception to the exhaustion doctrine." *Consol. Bearings Co. v. United States*, 348 F.3d 997, 1003 (Fed. Cir. 2003). Here as well, Plaintiff fails to identify any applicable exception to the exhaustion requirement, nor even request a waiver, despite recognizing that § 1592(b) exhaustion is discretionary. Pl.'s Resp. 13. Because Plaintiff has made no effort to persuade the court to abandon a presumption favoring exhaustion, the court deems the issue waived.

Regardless, the court believes that § 1592 precludes a waiver of exhaustion in this case. Contrary to Plaintiff's position, Congress designed § 1592 not merely to articulate the elements of the importer's potential liability at trial, but also "to give an importer an opportunity to fully resolve a penalty proceeding before Customs, before any action in this Court." *Optrex*, 29 CIT at 1500 (citing S. Rep. No. 95-778, at 19-20 (1978)). Even a cursory reading of the statute indeed reveals that § 1592(b) twice grants importers "a reasonable opportunity" to address Customs' allegations (following the pre-penalty notice and in a § 1618 petition) and demands that Customs impose a penalty only after considering (and, in the case of a § 1618 petition, addressing) the importer's representations. *See* § 1592(b)(1)-(2). Moreover, applicable regulations mandate that

Customs cancel a penalty claim if the agency record, including the importers' submissions, demonstrates the absence of a crucial element of the claim.[8]  19 C.F.R. § 171, App. B(F)(2)(d).

To waive exhaustion in this context would force importers either to abandon the administrative opportunities for resolution that § 1592 affords or, in composing their administrative responses, to guess at whether Customs will choose to allege a lesser culpability before the Court or indeed alter any of the statutorily prescribed factors that must be included in the pre-penalty notice and penalty claim.

True, an importer could – as Nitek did, Def.'s Reply Ex. 1 – respond to a claim of gross negligence by alleging that it exercised reasonable care, an assertion (if true) that would sufficiently rebut an allegation of negligence as well.  (Notably, Plaintiff did not take any action in response to Nitek's assertion.)  Even in this seemingly innocuous circumstance, though, the court cannot sanction the administration of a penalty scheme in which statutory prescriptions are ignored and importers are left with uncertainty regarding the level of culpability the government will allege before the Court.[9]  This approach would frustrate the back-and-forth between

---

[8] Indeed, this regulation presumably requires Customs to cancel a claim for gross negligence if the importer demonstrates in its submissions an absence of the requisite scienter (willful or wanton disregard), a crucial element of that claim.  *See Ford Motor Co.*, 463 F.3d at 1292 ("[A] determination of gross negligence involves a determination of intent . . . ." (citation omitted)); *see also* 19 C.F.R. § 171, App. B(C)(2).  That same showing, however, would not be sufficient to extinguish a claim for negligence, a level of culpability that does not require scienter.  *See*, *e.g.*, *United States v. Optrex Am., Inc.*, 30 CIT 650, 661 (2006) (not reported in F. Supp.).  In light of this regulatory scheme, Plaintiff's position (that alleging only gross negligence below automatically perfects a claim for negligence as well) seems, at best, counterintuitive.

[9] In a rather puzzling mischaracterization of the law, counsel for Plaintiff asserts the following: "In an action brought for gross negligence or negligence, the Government must show that a material omission occurred, after which the burden shifts to the alleged violator to prove by a preponderance of evidence that reasonable care was exercised."  Pl.'s Resp. 14 (citing 19 U.S.C. § 1592(e)(4); *United States v. Menard, Inc.*, 16 CIT 410, 795 F. Supp. 1182 (1992)).  This is not true.  Section 1592(e)(3) provides that "if the monetary penalty is based on gross negligence, the United States shall have the burden of proof to establish *all the elements* of the alleged violation."  § 1592(e)(3) (emphasis added).  By contrast, § 1592(e)(4) provides that "if the

Customs and importers at the administrative level thereby inhibiting the resolution of penalty claims prior to suit, as § 1592(b) encourages.  Conversely, nothing prevented Customs from bringing penalty claims for both negligence and gross negligence in the alternative, as it has done in the past, *see*, *e.g., United States v. Inn Foods, Inc.*, 31 CIT 1474, 515 F. Supp. 2d 1347 (2007), and the court is doubtful that it would have burdened Customs (in any significant sense) to do so. The court therefore finds that Plaintiff's penalty claim is barred.

**C. Plaintiff's § 1592(d) Claims**

Finally, the court must address whether Customs' failure to exhaust administrative remedies bars its § 1592(d) claims as well.  Defendant argues that Customs' failure to issue a written statement pursuant to § 1592(b)(2) prevents recovery of lost duties on the subject merchandise and, further, that Customs' failure to list six entries in the penalty claim (previously listed in the pre-penalty notice) prevents recovery on those entries.  Def.'s Br. 5-6; Def.'s Reply 2-4.  Plaintiff responds that lost duties claims are not predicated on § 1592(b) exhaustion.  Pl.'s Resp. 23-24; Pl.'s Surreply 8.  Accordingly, Plaintiff also argues that its failure to list the six entries in the penalty notice does not prevent recovery on those entries.  Pl.'s Resp. 23-24.

Section 1592(d) provides that "if the United States has been deprived of lawful duties, taxes, or fees as a result of a violation of subsection (a) of this section, [Customs] shall require that such lawful duties, taxes, and fees be restored, *whether or not a monetary penalty is assessed*."  § 1592(d) (emphasis added).  This subsection creates an independent cause of action, *United States v. Blum*, 858 F.2d 1566, 1568-69 (Fed. Cir. 1988), and the "government's right to recover unpaid duties under section 1592(d) does not depend on its right to obtain penalties

---

monetary penalty is based on negligence, the United States shall have the burden of proof to establish the act or omission constituting the violation, and the alleged violator shall have the burden of proof that the act or omission did not occur as a result of negligence." § 1592(e)(4).

pursuant to section 1592(c)." *United States v. Jac Natori Co.*, 108 F.3d 295, 299 (Fed. Cir. 1997) (citation omitted); *see United States v. Inn Foods, Inc.*, 560 F.3d 1338, 1348 (Fed. Cir. 2009) (noting that § 1592(d) action exists even if Customs chooses not to assess penalty (citing H.R. Rep. No. 95-621 at 16 (1977)). Relying on the above, the Court has previously held that the government need not exhaust administrative remedies prior to seeking recovery of lost duties. *See United States v. Aegis Sec. Ins. Co.*, 29 CIT 1263, 398 F. Supp. 2d 1354 (2005).

Section 1592 does not provide any administrative process for imposing lost duty claims, *see generally* § 1592, and Defendant cites no authority (statutory or otherwise) that indicates § 1592(d) claims are subject to an exhaustion requirement. Plaintiff has alleged a violation of § 1592(a) that deprived the United States of lawful duties and antidumping duties, the payment for which Nitek is responsible. Compl. ¶¶ 6-19. These are "the essential elements of § 1592(d) liability." *Aegis Sec. Ins. Co.*, 29 CIT at 1265, 398 F. Supp. 2d at 1356. Plaintiff thus states a plausible claim for recovery of duties lost on the entries listed in its complaint, *see Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570), and the court will not dismiss this portion of the government's case.

### IV. Conclusion

For the reasons stated, it is hereby

**ORDERED** that Defendant's motion to dismiss pursuant to USCIT R. 12(b)(1) is denied; it is further

**ORDERED** that Defendant's motion to dismiss Counts I and II pursuant to USCIT R. 12(b)(5) is denied; it is further

**ORDERED** that Defendant's motion to dismiss Count III pursuant to USCIT R. 12(b)(5) is granted; and it is further

**Court No. 11-00078**                                                                                                    **Page 16**

      **ORDERED** that counsel for the parties shall confer and inform the court by May 14, 2012, how they intend to proceed in this matter by filing a proposed joint scheduling order.


Dated: <u>April 13, 2012</u>                                                            <u>/s/ Judith M. Barzilay       </u>
       New York, NY                                                                    Judith M. Barzilay, Senior Judge